S04A1682. MADDOX v. THE STATE.
(607 SE2d 587)

BENHAM, Justice.

The trial court granted appellant Craig M. Maddox an out-of-time appeal in April 2004 and he now seeks review of the judgment of conviction entered after he pled guilty to malice murder in December 1998, as well as review of the judgment of conviction entered in June 1999 after a jury trial in which he was found guilty of burglary, aggravated assault, two counts of armed robbery, and three counts of possession of a firearm during the commission of a crime. The murder to which appellant pled guilty took place during the commission of the crimes for which he was tried in June 1999.[1]

---

[1] The crimes occurred on February 22, 1997, and appellant turned himself in to authorities in the early morning hours of February 23. He pled guilty to the malice murder charge on December 2, 1998, and was sentenced to life imprisonment. He filed a notice of appeal from the murder conviction on December 21, 1998. A jury trial on the remaining charges commenced June 7, 1999, and concluded the following day with the jury's return of its verdicts. On June 25, appellant was sentenced to 20 years' imprisonment, to be served concurrently, for the burglary conviction; life imprisonment for one armed robbery, to be served consecutively to the life sentence he received for the malice murder conviction; a consecutive sentence of 20 years for the second count of armed robbery; and three consecutive terms of five years' imprisonment for the three convictions for possession of a firearm during the commission of a crime. His motion for new trial, filed June 28, 1999, was denied December 29, 2003. On January 7, 2004, the trial court appointed appellate counsel, who filed a motion for out-of-time appeal on April 23 which was granted the same day. Appellate counsel filed a timely notice of appeal on April 30, 2004, to the Court of Appeals, seeking review of the December 1998 murder conviction as well as the December 2003 denial of the motion for new trial. The Court of Appeals transferred the appeal

1. At the guilty plea hearing, the assistant district attorney presented the facts the State would prove, the trial court found a sufficient factual basis upon which to accept the guilty plea, and appellant admitted the facts presented were "substantially correct." The facts set forth by the State were: Appellant and his co-indictee went to the Colquitt County home of Juanita Johnson on February 22, 1997. The co-indictee was armed with a pistol and he took money from Mrs. Louise Carter and a check written by Mrs. Johnson from Mrs. Johnson. Mrs. Carter was fatally shot by the co-indictee during the armed robbery after appellant told him to "do what you've got to do." While appellant did not handle the gun or the stolen property during the commission of the crimes, at least one witness had seen appellant with the gun prior to the commission of the crimes. The facts set forth by the State at the guilty plea hearing constituted a sufficient factual basis to support the acceptance of the guilty plea. See *White v. State*, 278 Ga. 355 (1) (602 SE2d 594) (2004); OCGA § 16-2-20 (party to a crime).

At trial, Mrs. Johnson, the surviving victim, identified appellant as the young man who came with the co-indictee to her home, ostensibly to see about the sale of one of the homeowner's cars to the co-indictee. The co-indictee entered the home, took $2 from Mrs. Carter, and took a $500 check the co-indictee demanded Mrs. Johnson write. Within earshot of appellant, who remained in the carport, the co-indictee repeatedly told the women he was going to kill them. The co-indictee asked appellant to come in the house when the co-indictee was "fixing to pop them," and appellant stated, "You go ahead and do what you've got to do and let's go." The co-indictee then shot Mrs. Carter in the head from close range with a .25-caliber pistol, and fired a shot at Mrs. Johnson's head that grazed her scalp.

The day after the shooting, appellant, accompanied by his mother, turned himself in to police and surrendered a .25-caliber pistol. A GBI microanalyst testified the pistol turned in by appellant "probably fired" the .25-caliber slug removed from Mrs. Carter and did fire another bullet found in the Johnson home. A classmate of appellant and the co-indictee testified appellant and the co-indictee were together the afternoon before the shootings and appellant showed a gun to the witness. The witness identified the gun proven to have been the gun used in the shootings as the gun he was shown by appellant. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt as a party to the crimes of burglary, armed robbery, aggravated assault, and

to this Court, where it was docketed on June 16. The case was submitted for decision on the briefs.

possession of a firearm during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 16-2-20 (party to a crime).

2. Appellant contends the trial court erred when it denied his pre-trial motion for change of venue. Supplementing the motion were copies of newspaper articles written from February 1997 through December 19, 1998.[2] The trial court held a hearing on the motion after completion of the jury voir dire and before the jury was struck. One of the 36 venire members was excused for cause because of the effect on her of several newspaper articles reporting the commission of the crimes.

> The trial court has the discretion to grant a change of venue and its discretion will not be disturbed absent an abuse of that discretion. "In a motion for a change of venue, the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible." [Cit.] We cannot say the trial court abused its discretion when appellant: (1) made no showing that the setting of the trial was inherently prejudicial, i.e., that any publicity was factually incorrect, inflammatory, or reflective of an atmosphere of hostility; and (2) failed to demonstrate that [he] could not receive a fair trial due to the prejudice of individual jurors since only [one] potential [juror was] excused for having a fixed opinion about appellant's guilt. . . . [Cit.]

*Eckman v. State*, 274 Ga. 63, 68 (4) (548 SE2d 310) (2001). See also *Morgan v. State*, 276 Ga. 72 (4) (575 SE2d 468) (2003).

3. Appellant next contends his murder conviction should be reversed because the trial court erred when it accepted appellant's guilty plea to the murder charge.

> To establish that a guilty plea is valid, the record must show that the defendant understood and intelligently entered the plea. [Cit.] The trial court must determine that the plea is voluntary, the defendant understands the nature of

---

[2] They consisted of two articles about the suspects being arrested; two articles published on Mrs. Carter's birthday, two months after the crimes; Mrs. Carter's obituary; and articles about the District Attorney's decision to seek the death penalty against the co-indictee, the trial court's issuance of a gag order in order to minimize pre-trial publicity, the co-indictee's entry of a not guilty plea, the decision to try appellant as an adult, the co-indictee's guilty plea to the murder charge, appellant's guilty plea to murder, and his withdrawal of his guilty pleas to armed robbery.

the charges, and there is a factual basis for the plea. In addition, the trial court must inform the defendant of the rights being waived, the terms of any negotiated plea, and the minimum and maximum possible sentences. [Cit.]

*Johnson v. State*, 275 Ga. 538, 539 (1) (570 SE2d 289) (2002). The transcript of the sentencing hearing reflects that appellant was informed of his rights to remain silent, to an attorney, to trial by jury, to confront witnesses, to subpoena witnesses, to present evidence, and to testify. Appellant stated he understood the charges[3] to which he was pleading guilty and that his entry of the guilty pleas was a voluntary act. The trial court found a sufficient factual basis for the plea. See Division 1, supra. The trial court stated the remainder of the charges in the indictment would be dismissed or nol prossed upon appellant being sentenced for the three crimes to which he was pleading guilty, and appellant was told murder carried a mandatory sentence of life imprisonment and armed robbery a sentence of not less than ten nor more than twenty years. Despite the trial court's thorough discussion of the nature and possible ramifications of appellant's entry of guilty pleas, appellant contends on appeal he did not understand the nature and consequences of his plea due to the fact he was 17 when he entered his pleas. Despite appellant's young age of 17, the record in this case supports the trial court's conclusion that appellant knowingly and voluntarily entered his guilty pleas. *Harland v. State*, 262 Ga. App. 803 (586 SE2d 705) (2003).

4. Appellant next takes issue with the trial court's refusal to permit appellant to withdraw the guilty plea two weeks after he entered it and was sentenced. "Although a guilty plea may be withdrawn anytime before sentencing, once a sentence has been entered, a guilty plea may only be withdrawn to correct a manifest injustice." *Wright v. State*, 275 Ga. 497, 498 (2) (570 SE2d 280) (2002); OCGA § 17-7-93; USCR 33.12. The test for manifest injustice "will by necessity vary from case to case, but it has been said that withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges." *State v. Evans*, 265 Ga. 332, 336 (3) (454 SE2d 468) (1995). The transcript of the guilty plea hearing shows appellant made a knowing, voluntary, and intelligent waiver of his rights and

---

[3] Appellant entered guilty pleas to the malice murder charge and two counts of armed robbery. He was immediately sentenced to life imprisonment for the murder conviction and a sentencing hearing was scheduled for the armed robbery pleas. Before sentence was imposed on the armed robbery guilty pleas, appellant withdrew his guilty pleas to the armed robbery counts.

knowingly, voluntarily, and intelligently entered his plea of guilty. Inasmuch as appellant has failed to show the existence of the manifest injustice necessary to authorize post-sentencing withdrawal of his guilty plea, the trial court did not err when it refused to permit him to withdraw his guilty plea to the murder charge. See *Cazanas v. State*, 270 Ga. 130 (2) (508 SE2d 412) (1998).

5. Appellant contends he was denied effective assistance of trial counsel. His contention is procedurally barred since " '[a] claim of ineffective assistance of trial counsel may not be asserted in an out-of-time appeal unless the defendant's new appellate counsel files a motion for new trial after the grant of the out-of-time appeal and raises the ineffectiveness claim.' " *Chatman v. State*, 265 Ga. 177, 178 (2) (453 SE2d 694) (1995). The fact that the trial court had denied appellant's motion for new trial prior to granting the out-of-time appeal did not preclude appellant from filing a second motion for new trial raising the issue of ineffective assistance of trial counsel. *Maxwell v. State*, 262 Ga. 541 (3) (422 SE2d 543) (1992). The failure to file a motion for new trial raising the claim of ineffective assistance of trial counsel bars review of that claim at this time. *Chatman v. State*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 10, 2005.

*Dorothy K. McCranie*, for appellant.
*Brian A. McDaniel, District Attorney, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.